Our second case for this morning is Rebirth Christian Academy v. Brizzi, No. 152220. And I believe we're going to hear again from Mr. Rose. A multi-purpose trip you took. You saved me a trip, Your Honor. Thank you. Who's answering the phones at the office? We have very, very few people at the office, but one of them, I'm trusted, is doing that today. May it again please the Court. Since at least Goldberg and Roth, it has been clearly established that when a government benefit cannot be revoked except for a cause, someone suffering that deprivation is entitled to at least minimal process. And not surprisingly, courts have routinely awarded damages for such violations. So let me tell you in a nutshell my thought about the theory that you have presented. The Supreme Court has divided the kind of process that needs to accompany a deprivation in many, many instances between pre-deprivation opportunities to say something and post-deprivation process. And in such cases as Cleveland Board of Education against Loudermill, which I recognize is in a somewhat different context, but it's all about due process. The Court has said that the pre-termination process can be really quite minimal. It can be oral, it just has to be noticed and an opportunity to be heard. And that is especially true if the post-deprivation process gives somebody the right to really flesh out, explore what's going on. So here, the Rebirth Christian Academy gets the letter from the state authorities. And the letter doesn't say, we are terminating your registration certificate effective immediately. The letter says, we're doing it in three weeks or give or take a period of time. And here are the problems we have. And so thinking of it kind of with Loudermill in mind, I don't see what prevented the Rebirth Christian Academy people from calling the state and saying whatever they wanted to say. Saying, we don't think we violated the requirements in any or all of the eight or whatever the number of respects alleged. Or, you know, we fixed numbers one and two, but we don't think there's any problem with the rest of them. They can say what they want to say. Now the state doesn't have to accept it. Then we get to the post-deprivation. And I certainly agree with your reading of this statute. You don't see an administrative post-deprivation process. But why is it our problem as a federal court, thinking of the due process clause, to tell the state of Indiana they have to have an administrative procedure as opposed to a court procedure? Because there is court procedure post-deprivation. Your Honor, I think that obviously there are several questions in that there. I disagree, first of all, that the pre-deprivation process satisfies due process here. But they were told what the problem was, quite specifically. They were told what the problem was. So we're okay with notice. Your issue has to be opportunity to be heard. I think notice also incorporates telling you that you have an opportunity to be heard. Certainly they had the description of what the state thinks that it did wrong. But nothing more than that. They were told that you're going to be revoked in three weeks, period. I don't think they were given a chance to contest that at any point. But why would the natural response to getting a letter like that be to hire your lawyer and contact them, or call them yourself, or somehow get back to them and have a conversation about it? Do you have to be told? I think you do, Your Honor. And obviously if the premise on which your question rests is correct, then Goldberg might have been wrongly decided. Matthews might have been wrongly decided. No, Matthews is just sliding scales. And we cited the First Circuit case. What about Loudermill? What about this sort of casual seat-of-the-pants pre-deprivation notice? I think there are certain circumstances in which pre-deprivation notice would suffice. If accompanied by something after the fact. And obviously this court in Shepherds was very, very clear that you can go to court. It is not an answer except for when you're faced with the parent circumstances when there's a random unauthorized act. Why is that? I don't understand that at all, actually. Your Honor, I think that half a century worth of due process jurisprudence would be turned on its head if all we told people is you can make a phone call and then you can sue us in court at some later date if you want. But why is an administrative procedure, it's certainly sufficient if the state would like, and in many, many instances governmental bodies prefer an administrative procedure because it's more efficient and maybe you have expert decision makers. There's a whole lot of reasons why you might want to do that. So we can all agree it's sufficient. But I have been racking my brains to think of a case where the Supreme Court has said we forbid you to use courts in lieu of an administrative procedure. I don't interpret the state, well, even accepting for purposes of argument the notion that you could have gone to court. And I think there's a dramatic question about that. The state makes a big deal about the fact that the Division of Family Resources, which oversees child care, is not subjected to our normal administrative orders and rules act. So there might not have even been an opportunity to seek judicial review as opposed to this. But whether we view it through the Matthews factors or not, and Matthews, I think there's obviously a significant burden on someone if you tell them you have to go to court and comply with whatever procedures that might impose on you. Whether we view it through that or not, as I say, I really don't think that there's any case out there that supports the proposition that the state agency can simply rely on the possibility that it can get sued at some later date instead of providing process to persons who are deprived of what it acknowledges is a property interest. Could a state say to child care providers, look, you have two choices to get license as a child care provider. License A is much easier to get, but it provides no due process before revocation. License B is much harder to receive, but you cannot lose your license without due process. Would such a scheme be okay if transparent in that way? If license A can only be revoked for cause, I think you'd be entitled to process when that was revoked. Now, you could get into an issue as to whether you knowingly, voluntarily, and intelligently agreed to be deprived of your constitutional right to due process, and I think that might be where that issue has to be funneled through. But certainly when persons apply for or register as unlicensed ministries, they're not told we're going to operate this particular system by the seat of our pants. Their assumption is that when the state says you violated this statute, and obviously we disagree that the statutes were violated, you're going to get an opportunity to contest that. And at that point, we really get into the types of, numerous types of traditional due process protections that are not made available here. They did have notice of what they were alleged to have done wrong, query whether they had sufficient notice of the evidence on which the state relied, but the neutral fact finder, the opportunity to be heard. Is there still litigation pending in state court over reverse licensure? I don't think so, Your Honor, no. How long was the certificate of registration not in place? I mean, this is the damages phase that you're pursuing right now, so I just wonder how much. It still is not in place. My client has made the determination that it would rather put the specter of litigation behind it before it reopens its facility. So despite the permanent injunction issued in May 2015, it has chosen. So is the period when, at least as a matter of law, they couldn't operate their daycare center from the, it was a June date, wasn't it, June 22nd to May 2015? Certainly I agree that at some point the failure to mitigate kicks in. As a practical matter, by the fact that they could not operate their facility during that period, they actually lost the structure that their facility was in. So I think there are probably additional damages that come with that fact. But it's about three years, you're saying, between the revocation and the, so there was no preliminary injunction ever? No, Your Honor, there was not. Just wondering. I see that I'm in my revival line. Thank you. Mr. Craft? Good morning, Your Honors. May it please the Court. I think the basic thing here is that there's really no case law that put these individual defendants on notice that they personally were required to create administrative appeal process where a state statute didn't provide it or authorize it. And they did have the notice, the plan of improvement, and the opportunity for judicial review. But do you think that would, I mean, as long as the state passes a statute that's silent, you think that people would never know that it's quite clear that you can't take property? Suppose they actually took the computers out of the place or removed all the furniture and they said, no, we're not going to tell you why or when, we're not going to promise to give you any process to give this back. I mean, surely it would be obvious to somebody that the state has to accompany confiscatory measures like that with notice and an opportunity to be heard, to contest it. I agree in that instance. There are instances where, excuse the terminology from DeFilippo, patently unconstitutional. So if you go and take property and you try to rely on the fact that the statute doesn't provide anything, that would raise a different issue. But why is it so different? Because, I mean, Indiana can call these things whatever it wants to call them. But they are, very much like Judge Rovner's hypothetical, they are alternative pieces of paper from the state that allow somebody to operate a child care center. And the fact that one of them is called a certificate of registration available for religious organizations and the other one happens to be called, you know, a license, seems to me a matter of no federal constitutional significance. Well, I question whether a reasonable public official who's not an attorney would understand that an exemption and a license would both be a property interest. But that aside... But it's not just an exemption. You have to get this piece of paper, your certificate of registration. It's not like there's, that all the churches in Indiana can just go ahead and run daycare without any state oversight whatsoever. There is, in fact, as this case illustrates, meaningful oversight, even over the things that operate under certificates of registration, which come from the state. I understand your point, Your Honor. But I think the constitutional import will get into the Matthews versus Eldridge sliding scale. These ministries are exempt from licensure and, you're right, they do get the certificate, but along with taking this route, there are far less hoops for them to jump through. There is... But somebody worries about the temperature of the hot water coming out of the tap. Somebody worries about how easily one can see the criminal records of the people who work there. I mean, all of which sounds, I don't have any, it's not our case anyway, but it sounds perfectly reasonable to me. I'm sure the state of Indiana has paid as much attention as anybody else to the fact that just because you say you're a religious organization doesn't mean that there can't be the occasional bad apple involved in the thing. Right, Your Honor, and there is regulatory oversight, but I guess it's not as extensive. But it exists, and we all have known since the new property, Professor Reich, that this counts for the Due Process Clause. This is, to say clearly, established. This isn't some weird, you know, new thing that no public official would have realized. Yeah, you know, I've been thinking a lot about the fact that perhaps it isn't clear how much process has to be afforded an exempt daycare facility in this situation, but why isn't it clearly established that when a state defendant deprives a person of her livelihood by revoking a license, some amount of due process is absolutely required? Well, I think that probably is clearly established, so long as you have some analogous case law describing the property interest at stake. And here, as Chief Judge Wood alluded to, you've got a certificate, and so here, maybe the cases like Burson v. Freeman that say that a license is property would establish that. But then you get into... Well, it would be unlawful to operate as a daycare center without either that certificate or a license. Is that not correct? Yes. Well, there are a list of, like, eight other exemptions. All right, so do we need to have a specific case that says a childcare license cannot be revoked without due process? Do we need a case that says the state cannot revoke an exemption from licensure without due process? I mean, does it have to be in a case where the entity suffering the harm is a religious entity? How specific does it have to be? And I think that it doesn't have to be directly on point. And I want to clarify... It does or doesn't? It does not have to be directly on point. And I think this circuit's precedent, as well as the Supreme Court precedent, establishes that. But there does have to be some closely analogous situation. And you have to define the right really from the perspective of the defendant, the individual defendant. And the circumstances... Why do you have to do that? I mean, it seems to me the right is defined by state law. And then the question is, you know, is it something that any reasonable person would know about? This is the right to operate a business, basically. I'm sorry. I may have confused some things. I'm not talking about the property right. I'm talking about the qualified immunity, clearly established constitutional right, and how that... But that depends on how well-established the right was. That's why you agreed readily with me if they went and took furniture. You know, we've all known for multiple hundreds of years that if you take somebody's personal property, you've got to do something about it. You know, you can't just take it, even if you're the state. And then there's licenses. There are other kinds of rights, such as the right to receive welfare benefits in Goldberg v. Kelly, or such as other kinds of licenses that the Supreme Court has now recognized for 50 years rise to the level of something that counts as property under the 14th and 5th Amendments. Yes. I may have gone down a wrong path here. The three facts that I talk about, the exemption versus license, the amount of process, and then the existence, the status of state law, I'm not viewing those as, you know, one of them carries the day. What I'm trying to get across is that all three of those are circumstances that have to be taken into account. So if you have a case, even if you had a case that said an exemption from daycare licensure is property interest, I still don't know that that would carry the day here, because we then have the question of how much process is provided. And also the fact, you know, this law has been on the books for at least 20 years. It's never been challenged until now. I don't know what I'm supposed to take from that, though. I mean, sometimes people just don't bring lawsuits. We don't know. I understand. In Doe versus Heck, this court put some emphasis on the fact that a state law authorized what the court called patently unconstitutional conduct in that case, and it had never been challenged. Now, Chief Judge Wood, as you talked about earlier, this statute is really statutory silence, not a statute affirmatively authorizing some unlawful conduct. Well, it doesn't prohibit, as far as I could see, the responsible officials in the state agency from saying, you know, here's how we're going to do this. We're going to send a letter. Maybe the letter should say you have the chance either to contest that these findings were accurate or to, in some other way, bring yourself into compliance. They do number two, but they don't do number one. They don't say, you know, for all we know, the immunization records and the parent notices and the criminal history checks were, like, literally sitting in the next room, and the inspector never told anybody that they wanted them, and, you know, we don't know anything about the background facts here. So the inability to say to the state, you are proceeding on the basis of a mistaken understanding in fact, something which Matthews v. Eldridge really highlights as a reason for due process is missing. And this is what I was trying to get back to earlier. I think the real issue here is Matthews v. Eldridge's sliding scale. With the licensed entities, you have a ton of hoops to jump through. With the unlicensed ministries, there are fewer hoops, but because there are fewer hoops, there's greater risk. But still a lot of hoops, and the private interest that's being deprived is a very significant one. Right, but I also think that in the Matthews calculus, the government interest is probably higher because of the less extensive regulation of an unlicensed ministry. But there was no argument here. Your opponent says that if the state was exercising its authority on an emergency basis to shut down such a facility, whether it's a church-based facility or whether it's a private facility, but if the state inspectors found someplace that they thought was endangering the children, the state has the ability to shut that down on the spot as it should. But they don't do that here. They sent a letter, they said, here are all these things, we're going to give you three weeks. So you don't get the sense from this record that this was being done on any kind of emergency basis. No, but I guess I'm trying to emphasize that I think when the Indiana legislature enacted this regime, it was meant to be less formal, more informal. How do we know the Indiana legislature ever thought about this issue, though? They just didn't say a word about it. Well, and this is why I think there's more than just mere silence here, because Chapter 4, which is the licensed centers, Chapter 5, which is the licensed home, and Chapter 6, which are the unlicensed ministries, were enacted at the same time. Chapters 4 and 5 for the licensed entities have several sections delineating the administrative process. Chapter 6 does not. And for an administrative official who's trying to interpret a statute, oftentimes what's not said is as important as what is. Well, particularly with a religious organization as opposed to a for-profit operation, right? I'm sorry? As opposed to a for-profit operation. You're looking at religious, which carries with it a lot of other aspects. Yeah, that does carry with it other aspects. And the reason for the exemption is something I'm still trying to get a hold of. It may be an accommodation issue. I think it started off as trying to serve low-income, rural low-income areas, give them child care. And it started off with, like, 30 ministries when it was first enacted. And now it's ballooned into, like, 600. And I think there are good reasons for doing away with the exemption, but whether that's something that... So it's changed from when the legislature first enacted it. Yes, it has. But I will say that going back to the plan of improvement and the informal process, how these things work usually is that you have an informal dialogue, similar to what Chief Judge Wood suggested earlier, where they call up and they say, I'm sorry. You have a minute. You may finish your thoughts. And they say, you know, we disagree, or how can we fix this, what was wrong? And it's supposed to be more informal, more dialogue like this. And then you have the notice and then a petition for judicial review. I have a question, and it's this. You stated in the brief that the alleged property interest was not in a license but in an exemption from licensure. Tell me why that matters. I think it's just, you know, to a constitutional lawyer or to a lawyer, it probably doesn't matter, but to a public official, they may not, a reasonable public official may not grasp that. And something that's been unanswered in the case law is what sort of knowledge do you impute to a reasonable public official? Is it the reasonable man on the streets? Also, it seems to me it gets back to the religious aspect of this thing. And part of the religious aspects is taking care of children. Yes, I think that's a big part of it. And that would impinge on part of their particular practice of the religion? Yes, I think there's a concern about too much state intervention into religious affairs there. Thank you. Thank you very much. Anything further, Mr. Rose? Yes. Your Honor, if a legislature's failure to act to establish an appeal mechanism, if that were sufficient to render, to immunize officials from damages liability, I think we would be faced with a situation where the only cases in which you could get over the qualified immunity analysis are those cases where a state official acts in contravention of an established statute or an established policy. But we know from Parrott that that isn't even a due process violation in the first place. That's a random unauthorized act. So I really do think the state's argument unwittingly sounds the death knell of damages liability for procedural due process violations. Obviously, that is not something the Supreme Court thought was true in Carey v. Pithis, and I don't think there's any support for that proposition. We cited in our briefing two circuit court cases and six district court cases in the context of professional licensure that found the qualified immunity analysis overcome under similar circumstances. Two of these cases found it so patently and flagrantly unconstitutional that it did not matter that the legislature had enacted a statute saying there will be no process. Those cases did so even when post-deprivation process was provided. The state has obviously provided process to child care centers and child care homes since whenever that statute came into effect. All we're asking for and all we asked for on summary judgment was that a similar process be provided for unlicensed ministries. The state knows how to provide that process. And going forward, it will be based on no one is appealing. And going forward, it will be. Obviously, we're just here on the damages issue. But this is the state agency that operates Medicaid, operates food stamps. Obviously, it knows what an appeal mechanism looks like. Thank you. All right. Thank you very much. Thanks to the state. To you, Mr. Rose, we will take the case under advice.